244 So.2d 102 (1971)
Clinton HARRISON, Plaintiff-Appellee,
v.
FIRST NATIONAL FUNERAL HOMES, INC., Defendant-Appellant.
No. 3285.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1971.
Rehearing Denied February 24, 1971.
Writ Refused April 7, 1971.
*103 Normann & Normann, by Michael A. Britt, New Orleans, for defendant-appellant.
Wilkins, Martin & Robertson, by J. Pargen Robertson, Alexandria, for plaintiffappellee.
Before SAVOY, HOOD and DOMENGEAUX, Judges.
HOOD, Judge.
Plaintiff, Clinton Harrison, instituted this suit to recover wages, penalties and attorney's fees alleged to be due him under the provisions of LSA-R.S. 23:631-23:632. The defendant is First National Funeral Homes, Inc. The trial court rendered judgment in favor of plaintiff, awarding him $12.49 as wages, $749.70 as penalties and $150.00 as attorney's fees. Defendant appealed, and plaintiff answered the appeal praying that the award of penalties and attorney's fees be increased.
The principal issue presented is whether plaintiff was informed prior to July 31, 1969, that his employment was being terminated on that date. If it should be determined that he was not notified of his discharge prior to that date, then an additional question is presented as to whether the penalties and attorney's fees awarded by the trial court are adequate.
Harrison was employed by defendant, First National Funeral Homes, Inc., effective June 1, 1969, to work as an assistant to the embalmer. He was to receive a salary of $250.00 per month, payable semi-monthly on the first and fifteenth of each month. Defendant paid plaintiff the full amount of the agreed salary from June 1 until July *104 31, 1969, inclusive, and plaintiff has received no other payments as salary from defendant since the last-mentioned date.
Plaintiff appeared at defendant's place of business on August 1 and August 2, 1969, and he remained on the premises during the greater part of both dates, although he performed no work for defendant on either of those days. He also reported to defendant's funeral home on August 3, but he was not permitted to enter, and was informed on that date that his employment had been terminated. Harrison contends that he was never informed of the fact that his employment was being terminated until August 3, 1969, and that he thus is entitled to recover wages for at least August 1 and 2, plus the penalties and attorney's fees provided by LSA-R.S. 23:631 and 632. Defendant contends that Harrison was notified on July 15 or 16, 1969, of the fact that he was being discharged effective July 31 of that year.
Rudy M. Weeks was the manager of the defendant funeral home in June, July and August, 1969. He testified that he personally informed Harrison on July 15 or 16, 1969, that his employment would be terminated as of July 31, 1969. He concedes that plaintiff came to defendant's premises on August 1 and 2, but he stated that Harrison performed no work on either day, and that Weeks instructed other employees to refuse to permit plaintiff to enter those premises on August 3.
Weeks' testimony is supported by other substantial evidence. Huey Rivers, for instance, testified that he was working for defendant in July, 1969, and that he was present and personally heard Weeks inform Harrison on July 15 or 16 that he was being discharged at the end of that month. On July 22, 1969, Weeks wrote a letter to Harmon LeDay, the auditor of defendant funeral home, advising LeDay, "Please drop from my payroll as of July 31, 1969, Clinton Harrison," and LeDay confirms the fact that he received that letter on or very shortly after the date it was written. Nell P. Wiley, who works for the employment agency which was assisting plaintiff in obtaining employment, stated that Harrison informed her several months later that he had been fired in July, 1969. And, Peter Selz, who worked for defendant until July 23, 1969, testified that before he left his employment he knew that Harrison had been given two weeks' notice that he was being fired, because Weeks had written a note to Selz before July 23, advising that Harrison had been given two weeks' notice of his discharge.
Harrison testified that he was not notified of the fact that he was being discharged until August 3. We find no evidence in the record which tends to corroborate that testimony, although plaintiff contends that plaintiff's position is supported by some statements made by Weeks at a hearing held on April 8, 1970, before the Appeals Tribunal for the Department of Employment Security relating to Harrison's claim for unemployment compensation. Plaintiff interprets Weeks' testimony at that hearing to be that Weeks did not notify Harrison of his discharge before the first of August, which statement, if correctly interpreted by plaintiff, would be contrary to Weeks' testimony in the instant suit. The statements made by Weeks at that hearing, on which plaintiff relies to support this argument, are the following:
"ROBERTSON: But he was not in fact told by you prior to the first that he was actually discharged.
WEEKS: No, sir. After him giving the key, then when this was done.
ROBERTSON: So it wasn't until about one o'clock that Mr. Bannister when Mr. Bannister told him that he was discharged that he was actually notified by the company of his discharge.
WEEKS: Yes, sir, at this time."
We agree that the above-quoted portion of Weeks' testimony at the unemployment compensation hearing, alone and out of context, indicates that Weeks' statements *105 at that hearing are inconsistent with his testimony in the instant suit. After reviewing all of his testimony, however, we have concluded that there is no such inconsistency. In other parts of his testimony at the above-mentioned hearing, Weeks made it clear that Harrison had been notified before July 31 that he was being discharged on that date. He stated that plaintiff, in fact, had turned in his key on July 22 because he previously had been informed of his discharge. We interpret the above-quoted portion of Weeks' testimony at the unemployment compensation hearing to mean that Weeks did not give Harrison any further notice of his discharge immediately prior to August 1 because "it was understood that he would be gone on the first anyway."
The trial judge concluded that "plaintiff's discharge, if any, prior to August 3, was not communicated to plaintiff." He assigned as the principal reason for that conclusion that the transcript of the testimony of Weeks taken at the hearing for unemployment compensation benefits indicated that "plaintiff's reason for discharge principally seemed to be that he refused to carry out his duties on the 2nd of August," and that Weeks' testimony "leads to the conclusion that plaintiff was not discharged until August 3."
We think the evidence preponderates to the effect that plaintiff was notified by Weeks on July 15 or 16 that his employment would be terminated on July 31, 1969. We feel, therefore, that the trial court erred in interpreting Weeks' testimony at the unemployment compensation hearing as being inconsistent with his testimony at the trial of the instant case, and that it also erred in holding that notice had not been given to plaintiff of his discharge prior to July 31, 1969.
The established rule is that the provisions of LSA-R.S. 23:632, being coercive or penal in nature, must be strictly construed, and that courts will refuse to allow penalties if the employer had some equitable justification for not paying the wages timely. Becker v. Choate, 204 So.2d 680 (La.App. 3 Cir. 1967); Stell v. Caylor, 223 So.2d 423 (La.App. 3 Cir. 1969).
The burden of proof rests upon plaintiff to establish by a preponderance of the evidence the facts upon which he relies to support his claim for an award of penalties under LSA-R.S. 23:632. Two of these essential elements of proof, of course, are that wages actually are owed to plaintiff and that such wages have not been paid. We conclude that in the instant suit plaintiff has failed to establish by a preponderance of the evidence that any wages are due plaintiff from and after July 31, 1969. Since no wages were due, plaintiff is not entitled to recover penalties and attorney's fees because of defendant's failure to pay any such wages.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiff, rejecting plaintiff's demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.