# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 13-649

THE COTTONPORT BANK

VERSUS

KELLER PROPERTY MANAGEMENT, LLC

\*\*\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## TWELFTH JUDICIAL DISTRICT COURT
## PARISH OF AVOYELLES, NO. 2012-8008-B
## HONORABLE WILLIAM J. BENNETT, JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

Kelvin G. Sanders
P. O. Box 13922
Alexandria, LA 71315
COUNSEL FOR DEFENDANT-APPELLANT:
    Keller Property Management, LLC

Anthony J. Roy, III
P. O. Box 363
Marksville, LA 71351
PLAINTIFF-APPELLEE:
    The Cottonport Bank

**PAINTER, Judge.**

Keller Property Management, LLC (Keller) appeals the award of attorney's fees made by the trial court in connection with The Cottonport Bank's (the Bank's) suit on a note. For the following reasons, we affirm the award.

## FACTS

The Bank filed suit against Keller for its failure to pay as required by the terms of two promissory notes. During the pendency of the suit, Defendants paid the principal and interest due on the note. The Bank then filed a motion for summary judgment seeking payment of attorney's fees in the amount of $10,878.97, which represented 25% of one of the promissory notes. The trial court granted the motion and awarded fees in the amount of $10,000.00. Keller appeals this fee as excessive.

## DISCUSSION

Keller argues that the fee is out of proportion to the services rendered by the attorneys in connection with the suit. The trial court gave extensive reasons for its award as follows:

> This most unusual litigation was before the Court on March 13, 2013[,] pursuant to a Motion for Summary Judgment filed by plaintiff, The Cottonport Bank. Formal Judgment was signed March 13, 2013[,] granting the Motion for Summary Judgment filed by The Cottonport Bank as it relates to the issue of attorney's fees insofar as acknowledging that The Cottonport Bank is entitled to attorney's fees, however, denying the Motion for Summary Judgment as to the amount of attorney's fees. A stipulation was entered that the attorneys were allowed a period of time within which to submit memorandum of authority. The amount of attorney's fees [is] decided by this Court based on the record and memorandum.
>
> In preparation for this opinion, the Court has reviewed the entire record of this proceeding and related proceedings, all evidence adduced at various Hearings, argument of counsel,

1

and this Court has performed an independent review of applicable law and jurisprudence.

In order to issue an adequate ruling in this case, it is most important that this Court review the various matters of litigation involving the identical parties to the proceeding in the case at bar. The following summary of the various items of litigation all revolve around activities conducted by Francis Keller, as confirmed by evidence adduced in this proceeding and related proceedings. These actions, in summary, are as follows:

1) Francis Keller enters into an agreement with Williams Scotsman for the purchase of a building.

2) Francis Keller enters into a loan agreement with The Cottonport Bank to obtain the funds to purchase the building.

3) The Cottonport Bank issues [an] $18,000.00 check made payable to Williams Scotsman for the purchase of the building and delivers the check to Keller to be delivered to Williams Scotsman.

4) The building is delivered to Keller based on the representations from The Cottonport Bank that the loan has been executed.

5) Keller endorses the check with the notation "not for purpose intended" and same is negotiated at Capital One Bank with Keller receiving the sum of $18,000.00.

6) Scotsman contends that they did not receive any sales proceeds whereas Keller contends that he did pay Scotsman for the building.

(As a result of the above actions, Williams Scotsman, Inc. instituted litigation against Francis Keller on April 17, 2012[,] as reflected in Civil Suit Number 2012-7905-B of the Twelfth Judicial District Court. The Cottonport Bank is named a defendant in this litigation along with Francis G. Keller, Keller Companies, Inc., and Keller Property Management, LLC. The Sales Agreement was signed by Keller as owner of Keller Companies, Inc. with Williams Scotsman on December 2, 2011. On February 3, 2012[,] Keller allegedly forwarded to Scotsman a copy of the check payable to Scotsman in the sum of $18,666.29, and as a result, the building was delivered to Keller on February 13, 2012).

7) On May 15, 2012[,] The Cottonport Bank filed an Answer and Reconventional Demand in the Scotsman litigation.

8) On May 11, 2012[,] The Cottonport Bank instituted the litigation in the case at bar naming Keller Property Management, LLC and Francis G. Keller as defendants. This loan is obviously the loan which included the proceeds for the purchase of the building acquired by Keller from Scotsman based on the fact that the security for said loan (which includes 2 promissory notes), is the mobile office building; five certificates of deposit totaling $40,000.00; and a real estate mortgage. The petition alleges balance is due on the two notes and the sum of $53,031.96 and $49,366.35. The bank requests attorney's fees in the sum of $10,606.39 and $9,873.27.

9) The Cottonport Bank files a separate lawsuit naming Keller as a defendant on October 31, 2012[,] bearing Civil Suit Number 2012-8635-B. In this litigation, the bank alleges that a promissory note was executed June 30, 2009[,] secured by a real estate mortgage on property which appears to the lot upon which the Scotsman building is situated. A Sheriff's Sale has been scheduled for June 12, 2013.

It is also most interesting to note that during the pendency of these various proceedings, Keller has been represented by multiple attorneys, at least four in number. Keller has also filed pleadings in proper person. All of the litigation involving Keller and The Cottonport Bank result from the alleged actions of Keller in the purchase of the building from Williams Scotsman and the banks related decision thereafter to no longer do business with Keller. One of Keller's attorneys remarkably argued to this Court that a bank has a duty to renew loans when they mature.

Another remarkable aspect of the litigation in the case at bar is that the entirety of the principal and default interest due on the promissory notes at issue have been paid, leaving only the issue of attorney's fees. It is undisputed that the promissory notes executed by Keller include provisions that "if lender refers this note to an attorney for collection, or files suit against borrower to collect this note, or if borrower files for bankruptcy or other relief from creditors, borrower agrees to pay lenders reasonable attorney's fees."

Additionally, the promissory notes at issue include provisions allowing the bank to "insist upon immediate payment in full of...reasonable attorney's fees, costs, expenses, and other fees and charges as provided herein."

This clause reminds this Court that the evidence also indicates that at some point during this litigation, Keller

3

instituted a bankruptcy proceeding a day or so before a scheduled Sheriff's Sale, which bankruptcy proceeding was thereafter dismissed. Another strange and unusual occurrence.

Had Keller delivered the $18,000.00 check payable to Scotsman and issued by The Cottonport Bank directly to Scotsman, the Scotsman litigation would not have occurred and the bank in all likelihood would not have placed Keller in default. Keller caused the problem and he must pay according to law.

With the above discussion in mind, this Court must now address the amount of attorney's fees to be awarded to The Cottonport Bank. However, this Court must note that the above discussion is extremely important in reaching a decision as to a reasonable amount of attorney's fees. This Court is firmly and absolutely convinced that the amount of attorney's fees to be awarded to the bank have become necessary due to the actions of Keller; in support of their request for attorney's fees, the bank has submitted a detailed billing statement dated March 8, 2013[,] which is attached as an exhibit to the Motion for Summary Judgment. In his memorandum, Keller remarkably alleges that the bank has not provided adequate documentation supporting the time expended in the Keller litigation and alleges that the case at bar does not involve complex issues nor unusual amount of preparation time. A simple review of the record reveals otherwise. Keller would have one believe after reading his memorandum that this is a simple suit on promissory note where payment was received immediately thereafter. However, this belies the fact that this litigation has been anything but a simple "suit on note - - -payment - - -dismissal." Keller has been represented by no less than two attorneys in this litigation alone. Keller has filed a request for notice; motions to enroll; motions to withdraw by attorneys; an answer; an emergency motion for a status conference; a status conference in chambers was conducted, which conference was attended by other counsel who was not enrolled; an Exception of Insufficiency of Service of Process filed by current counsel for Keller and a record that is anything but a simple ordinary "suit on promissory note." It must be recalled that part of Keller's defense to the requested status conference was a remarkable claim that the bank had a duty to re-finance the promissory notes at issue. This status conference was held in chambers on November 20, 2012. The principle and interest were paid November 29, 2012.

Also, as part of the record herein, there is a Judgment which was rendered by this Court on February 4, 2013[,] and signed February 26, 2013[,] denying Keller's request for a preliminary injunction to enjoin the bank from proceeding with a Sheriff's Sale, which apparently was in companion litigation.

4

However, the Judgment is filed in the instant proceeding and under this heading, which appears to be an obvious error. This only further substantiates this Court's finding of the related nature of all of the litigation involving Keller and The Cottonport Bank.

It is easy for this Court to understand Keller's dispute with the amount of attorney's fees being claimed by the bank based on simple facts that the notes at issue have been paid in full, principle and interest, without trial. However, it is clear from a reading of the detailed attorney's fees statement issued by the bank that this litigation has been anything but routine. In fact, in reviewing the statement in detail, this Court notes that there are several items which the bank may have omitted in this and companion litigation.

Keller remarkably asserts to this Court that an award of 7.5 hours of work, inclusive of Court Hearings, would be the proper amount of attorney's fees to be awarded. Considering a simple review of this record, much less the record of the companion proceedings, this claim is absurd.

After a consideration of all factors and after a review of the various cases cited by counsel for Keller and this Court's independent review of applicable law and jurisprudence [sic].

Accordingly, this Court awards attorney's fees in the sum of $10,000.00.

The Louisiana Supreme Court in *Rivet v. State, Dept. of Transp. and Dev.*, 96-0145, pp. 11-12 (La. 9/5/96), 680 So.2d 1154, 1161, set out factors for determination of a reasonable attorney's fee.

Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. *State, DOTD v. Williamson*, 597 So.2d 439, 441-42 (La.1992) and cases cited therein. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id*. at 442.

5

However, "a trial court's determination of attorneys' fees will not be disturbed unless it is manifestly erroneous." *St. Blanc v. Stabile*, 12-677, p. 6 (La.App. 5 Cir. 4/24/13), 114 So.3d 1158, 1161 , *writ denied*, 131185 (La. 8/30/13), 120 So.3d 270.

After reviewing the record and the trial court's reasons for ruling in light of the *Rivet* factors, we find no error in the award made by the trial court.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Defendant-Appellants, Keller Property Management, LLC.

**AFFIRMED.**