# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-395


CAROLYN GAY STANLEY, ET AL.

VERSUS

CROWELL & OWENS, LLC



**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 242,568
HONORABLE GEORGE C. METOYER JR, DISTRICT JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Kenneth M. Wright**
**Attorney at Law**
**203 West Clarence Street**
**Lake Charles, LA 70601**
**(337) 439-6930**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Carolyn Gay Stanley**
    **Stanley Holdings, LLC**

**Jimmy R. Faircloth, Jr.**
**Faircloth, Melton & Keiser, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Crowell & Owens, LLC**

**PETERS, J.**

Carolyn Gay Stanley, individually and as the executrix of the Succession of Harlton K. Stanley, and Stanley Holdings, LLC, appeal a trial court judgment awarding Crowell & Owens, LLC, attorney fees in the amount of $85,000.00. For the following reasons, we affirm the trial court judgment.

## DISCUSSION OF THE RECORD

The underlying dispute giving rise to this appeal is a July 2000 Engagement Agreement (hereinafter referred to as the "Agreement")[1] entered into between Machal, Inc.,[2] a Rapides Parish for-profit corporation, and Crowell & Owens, LLC (Crowell & Owens), an Alexandria, Louisiana law firm. A dispute subsequently arose between the parties, and on September 6, 2011, Harlton K. Stanley[3] and Machal, Inc. filed suit against Crowell & Owens, seeking a judgment declaring the Agreement null and void as a violation of Rule 1.5(a) of the Louisiana Rules of Professional Conduct, and awarding damages sustained under the Agreement.

In its initial response, Crowell & Owens answered the suit, filed a reconventional demand against Mr. Stanley,[4] and filed a third-party demand against Stanley Holdings, LLC (Stanley Holdings).[5] In these responsive pleadings, Crowell & Owens asserted the validity of the Agreement and alleged that Machal, Inc. had assigned its rights in that Agreement to Stanley Holdings in April of 2007. The responsive pleadings further asserted that on March 6, 2011, Mr. Stanley and Stanley Holdings executed a $989,375.00 promissory note payable to the law firm

---

[1] The Agreement itself is a legal services agreement with special conditions. These special conditions are the basis of the September 6, 2011 suit.

[2] The initial pleading identifies the corporation as "Machal, LLC." However, all of the agreements giving rise to the litigation which are found in the record refer to the entity as "Machal, Inc." We will refer to the entity in its corporate capacity.

[3] The agreement identifies Harlton K. Stanley as the President of Machal, Inc.

[4] Crowell & Owens did not join Machal, Inc. as a defendant-in-reconvention.

[5] The record identifies H. K. Stanley as the "manager/member and majority owner" of Stanley Holdings, LLC.

for the purpose of satisfying "all the rights, duties and obligations of the parties to [the Agreement]." In their responsive pleadings, Crowell & Owens sought dismissal of the suit filed by Mr. Stanley and Machal, Inc. and sought judgment against Mr. Stanley and Stanley Holdings for damages and attorney fees. On March 22, 2013, Crowell & Owens amended their third-party demand to add Carolyn Gay Stanley and an additional third-party defendant. The basis for Ms. Stanley's liability to Crowell & Owens was that she had joined with Mr. Stanley and Stanley Holdings in executing the March 6, 2011 promissory note.

Mr. Stanley died on September 22, 2012, and on April 22, 2013, Ms. Stanley, as the testamentary executrix of his succession, petitioned the trial court seeking to be substituted for Mr. Stanley in the litigation. The trial court executed an order to this effect the next day.[6]

The parties filed numerous preliminary pleadings during the early stages of the litigation, including a motion for summary judgment on the promissory note issue filed by Crowell & Owens. The trial court heard that motion on July 15, 2013, and rendered judgment granting Crowell & Owens' requested relief. The August 1, 2013 judgment executed by the trial court contained the following dispositive language:

> IT IS ORDERED that the Motion for Summary Judgment on the Promissory Note is hereby granted and judgment is rendered herein in favor of Crowell and Owens, LLC against Carolyn Gay Chevalier Stanley, individually and as executor of the Succession of Harlton K. Stanley, and also against Stanley holdings, LLC in the amount of $989,375.00 plus interest and attorney's fees under the promissory note dated March 6, 2011, with the issue of the amount of attorney's fees being deferred to a later date.

---

[6] The trial court order allowing the substitution refers to Ms. Stanley as the testratrix of the succession rather than the executrix. However, the order from the probate court establishes that she is the testamentary executrix.

2

The judgment was subsequently affirmed on appeal. *Stanley v. Crowell & Owens, LLC*, 13-1425 (La.App. 3 Cir. 5/21/14), 141 So.3d 316, *writ denied*, 14-1739 (La. 9/12/14), 148 So.3d 937.

The trial court then heard the deferred attorney fee issue on November 10, 2014, and executed the judgment arising from that hearing on January 20, 2015. In that judgment, the trial court awarded Crowell & Owens $85,000.00 in attorney fees for services rendered in obtaining the judgment on the promissory note. That judgment forms the basis of the appeal now before us. In their sole assignment of error, Stanley Holdings and Ms. Stanley, individually and as executrix of the Succession of Harlton K. Stanley (hereinafter collectively referred to as "the Stanleys"), assert that the trial court erred in awarding Crowell & Owens attorney fees.

**OPINION**

The trial court based its attorney fee award on the terms of the promissory note, which provides that:

> Borrower agrees to pay the reasonable fees of any attorney-at-law employed by Lender to recover funds owed or to protect Lender's interest with regard to this Note. Such attorney's fees shall not exceed 10% of the amount of principal and interest due on this Note and are secured by the collateral securing payment of this Note.

The evidence provided to the trial court on the attorney fee issue included the March 6, 2011 promissory note; the affidavit of Jimmy R. Faircloth, Jr., the attorney for Crowell & Owens, and attachments to that affidavit; and the testimony of Mr. Faircloth. However, the order of introduction of this evidence constitutes the primary basis of the dispute on appeal.

This court reviews the trial court's award of attorney fees under the abuse of discretion standard. *Covington v. McNeese State Univ.*, 12-2182 (La. 5/7/13), 118

3

So.3d 343. In *Covington*, the supreme court stated that in applying that standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact." *Id.* at 351. Still, we review the trial court's factual findings in reaching the award at issue pursuant to the manifest error/clearly wrong standard. *Stobart v. State, Dep't of Trans. & Dev.*, 617 So.2d 880 (La. 1993); *Cottonport Bank v. Keller Prop. Mgmt., LLC*, 13-649 (La.App. 3 Cir. 12/11/13), 128 So.3d 668.

Additionally, the trial court has discretion in determining the amount of an attorney fee based upon its own knowledge, the evidence, and its observation of the case and the record. *Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc.*, 32,441 (La.App. 2 Cir. 12/8/99), 748 So.2d 594. In fact, a court does not have to hear evidence concerning the time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. *Burford v. Burford*, 95-2318 (La.App. 1 Cir. 06/28/96), 677 So.2d 722. When the nature and extent of the services of an attorney are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value even in the absence of expert testimony. *Mitchell v. Turner*, 588 So.2d 1305 (La.App. 2 Cir. 1991).

With regard to the fee an attorney may charge *his or her client*, Rule 1.5(a) of the Louisiana Rules of Professional Conduct provides:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

4

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Still, the rules governing situations as we have before us where the attorney is seeking to recover an attorney fee from a third party for the benefit of his or her client, the prohibition against collecting an unreasonable fee remains basically the same, but with the factors to be considered varying slightly. Noting that "[c]ourts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law[,]" the supreme court, in *State, Department of Transportation & Development v. Williamson*, 597 So.2d 439, 441-42 (La.1992) (citations omitted), reviewed the reasonableness of an attorney fee award to the prevailing party in an expropriation matter by considering the following factors:[7]

> Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

---

[7] The supreme court noted in Footnote 9 of the opinion that "these factors are derived from Rule 1.5(a) of the Rules of Professional Conduct[.]"

The evidentiary phase of the trial began with Mr. Faircloth offering his affidavit together with three attachments into evidence. The first attachment, Exhibit A, is a copy of the March 6, 2011 promissory note; the second, Exhibit B, is a one-page time summary of the work performed by various members of Mr. Faircloth's law firm on the promissory note issue; and the third, Exhibit C, is a ten-page document described as a discovery index and purporting to be a listing of the document filings as they appear in the suit record. Mr. Faircloth's affidavit asserts that he and his firm "rendered five hundred thirty and one tenth (530.10) hours of legal services amounting to attorney's fees in the amount of Ninety One Thousand Nine Hundred Ninety Two Dollars ($91,992.00) in connection [with its representation of Crowell & Owens], as more fully set forth on Exhibit 'B.'" Exhibit B identifies eight members of Mr. Faircloth's firm who performed legal services for Crowell & Owens, and lists the hours each worked on the case; that attorney's hourly rate; and the total value of the services rendered.

Counsel for the Stanleys objected to the introduction of both the affidavit and Exhibits B and C. In the argument to the trial court that followed, Mr. Faircloth noted that the amount charged was less than the ten percent allowed under the terms of the promissory note. He also acknowledged that the attached exhibit was not a "detailed, itemized statement," but argued that to provide such a document would require extensive redaction of privileged data. He then stated that he used members of his staff, who charged less per hour than he, to reduce the total expense as much as possible and even reduced his hourly rate. At this point, and with regard to his client's burden of proof, Mr. Faircloth asserted to the trial court that:

> [T]he law is pretty clear at all the circuits that when the nature and extent of the services of an attorney are shown by the record, the

> record as it exists, the court is required to bring to bear its own knowledge of the value of services of counsel and to fix value, even in the absence of expert testimony. So you – you can use your experience on the bench to look at the record and make some determinations as to the extent of work that was necessary on this case based on the record as it exists that you've had benefit of reviewing.

According to Mr. Faircloth, he relied on the affidavit and attachments to establish the number of hours worked and the charges to his client because he did not wish to voluntarily take the stand and, thereby, waive any attorney-client privilege he may have.[8]

At this point, Mr. Faircloth rested his case, and counsel for the Stanleys moved for an involuntary dismissal pursuant to La.Code Civ.P. art. 1672. Counsel for the Stanleys asserted that the affidavit and attached exhibits were not admissible and, therefore, Crowell & Owens failed to present any evidence to support an award of attorney fees. In opposition, Mr. Faircloth discussed the various factors set forth in *Williamson*, 597 So.2d 439, and asserted that the record was sufficient for the trial court to render judgment on the issue.

The trial court rejected the Stanleys' motion for involuntary dismissal, and counsel for the Stanleys then called Mr. Faircloth to the stand on cross examination. Mr. Faircloth testified that he was the managing partner of the law firm retained by Crowell & Owens for legal representation in this dispute, and this representation included the collection of the promissory note which was the subject of the August 1, 2013 judgment. He further explained how the hourly entries on Exhibit B were generated within the office through a computerized billing system known as PCLaw. Mr. Faircloth further testified that the computer-generated summary would contain no duplication of work because each month he would personally examine the entries and remove any duplications. Additionally, if he concluded

---

[8] Despite the testimonial nature of Mr. Faircloth's statements at this time in the trial, he had not yet been sworn to testify.

7

that the entry represented an excessive amount of time spent on a particular issue, he would reduce it to a more appropriate amount.[9]

The Stanleys do not argue on appeal that Crowell & Owens is not entitled to an attorney fee in obtaining the judgment on the note. Instead, they argue that an $85,000.00 award is not supported by the evidentiary record. Specifically, they argue that all of the factors of La.Rules Prof.Conduct, Rule 1.5(a) were not established; the trial court erred in not granting their motion for directed verdict and/or involuntarily dismissal; and the trial court erred in admitting Mr. Faircloth's affidavit and Exhibit B in that the affidavit was hearsay and Exhibit B failed to comply with the requirements of La.Code Evid. art. 1006.

We find no merit with the argument as it relates to La.Rules Prof.Conduct, Rule 1.5(a). As we previously noted, that Rule addresses the relationship between an attorney and his or her client, and not the situation where the court is called upon to review an attorney fee award against an opposing party. Instead, in this matter the factors to be considered are those set forth in *Williamson,* 597 So.2d 439.

The last three arguments must be considered together. We first note that a motion for directed verdict is relegated to jury trials and has no applicability to this litigation. La.Code Civ.P. art. 1810. The bench trial motion corresponding to that motion is a motion for involuntary dismissal as defined in La.Code Civ.P. art. 1672(B), which provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

---

[9] He indicated this was particularly important when examining the entries of an inexperienced employee.

This court has previously held that the standard of review for a ruling on an involuntary dismissal is manifest error. *Holloway v. City of Oberlin*, 09-324 (La.App. 3 Cir. 10/7/09), 21 So.3d 1063 The Stanleys argue that this motion should have been granted because the trial court erred in allowing Mr. Faircloth's affidavit and Exhibit B to be introduced into evidence.

We agree that Mr. Faircloth's affidavit is hearsay in that, when offered in Crowell & Owens' case-in-chief, it constituted a statement "other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). That being the case, the trial court erred in allowing it to be admitted into evidence. Although Mr. Faircloth did ultimately testify, that testimony occurred after Crowell & Owens rested their case.

With regard to Exhibit B, we find that the trial court erred in admitting them as well. Louisiana Code of Evidence Article 1006 provides:

> The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Additionally, while Mr. Faircloth attempted to explain the entries on Exhibit B, his comments at that time were not evidence, but mere argument.

We recognize that, were this most any other case, the errors in admitting the affidavit and Exhibit B into evidence would be fatal to Crowell & Owens' claim for relief. However, given the nature of the issue before us, a finding that the trial court erred in allowing the introduction of the affidavit and Exhibit B does not automatically require a grant of the Stanleys' motion for involuntarily dismissal. As previously stated, not only does the trial court have much discretion in

9

determining a reasonable award of attorney fees, it does not have to hear evidence concerning time spent or hourly rates charged and can make an award based solely on its knowledge and expertise after considering the record. *Burford*, 677 So.2d 722.

In this case, the trial court did not award Crowell & Owens the $91,992.00 requested. Nor did it provide extensive reasons for judgment in finding that Crowell & Owens were entitled to only $85,000.00. In fact, the trial court made no mention of Mr. Faircloth's affidavit, Exhibit B, or Mr. Faircloth's argument concerning the *Williamson* factors.[10] Instead, in the reasons for judgment, the trial court merely stated the following:

> Upon reviewing all files regarding this particular issue, the court realizes that there are some new and unusual issues presented and novel arguments and the briefs reflect all of that. And according to the files that I looked at, the court will accordingly set the attorneys' fees at eighty-five thousand dollars ($85,000)[.]

While we find merit in the Stanleys' argument that the trial court erred in allowing Mr. Faircloth's affidavit and Exhibit B into evidence, nothing in the trial court's oral reasons for judgment mention any reliance on the affidavit or Exhibit B. Additionally, we are limited to the trial court's assertion that the award was based on a review of "all files regarding this particular issue," as no party sought an elaboration on these reasons by filing a request for written reasons for judgment pursuant to La.Code Civ.P. art. 19179(A).

---

[10] Mr. Faircloth noted in his argument that the result of his firm's services was a judgment in his client's favor of more than $1,000,000.00 when interest was added; the responsibility and importance of the litigation was significant given the amount at issue; the extent and character of the work performed by his firm was evidenced by the record before the trial court; the legal knowledge, attainment, and skill of his firm had never been questioned by any court wherein they practiced; the record reflected the number of appearances before the trial court; and the trial court could see from the record the intricacies of the facts and the diligence and skill of the attorneys representing Crowell & Owens. Thus, the trial court was well aware of the application of those factors even though Crowell & Owens introduced no evidence directly relating to these factors.

As previously stated, our task on review is not to determine what we believe to be an appropriate judgment but to review the trial court's exercise of discretion. *Covington*, 118 So.3d 343. In our review of the record, we find no abuse of discretion on the part of the trial court in setting attorney fees in this matter. Therefore, we find no merit in the Stanleys' assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in favor of Crowell & Owens, LLC and against Stanley Holdings, LLC and Carolyn Gay Stanley, individually and as executrix of the Succession of Harlton K. Stanley, in the amount of $85,000.00. We assess all costs of this appeal to Stanley Holdings, LLC and Carolyn Gay Stanley, individually and as executrix of the Succession of Harlton K. Stanley.

**AFFIRMED.**