STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-748

ALI FAHED, ET AL.

VERSUS

FAYZ AYESH, ET AL.

**********

APPEAL FROM THE
NINTH JUDICAL DISTRICT COURT
PARISH OF RAPIDES, NO. 253,944
HONORABLE GREG BEARD, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Marc T. Amy, David Kent Savoie, and Van H. Kyzar, Judges.

AFFIRMED.

Jonathan D. Stokes
Max S. Antony
Gold, Weems, Bruser, Sues & Rundell
P. O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
COUNSEL FOR PLAINTIFF/APPELLANT:
        ALI FAHED

Howard B. Gist, III
The Gist Firm, A Professional Law Corporation
P. O. Box 13705
Alexandria, LA 71315
(318) 473-2501
COUNSEL FOR DEFENDANT/APPELLEE:
        ASM Food, Inc.

**KYZAR, J.**

The plaintiff, Ali Fahed, appeals from a trial court judgment awarding him $11,000.00 in unpaid wages, denying his claim for penalties, and awarding him $1,500.00 in attorney fees. For the following reasons, we affirm the judgment.

## DISCUSSION OF THE RECORD

Fahed and his wife, Amena Safi, filed suit against the defendants, ASM Food, Inc. (ASM) and Fayz Ayesh, alleging causes of action under the Louisiana Wage Payment Act, the Fair Labor and Standards Act, the Louisiana Unfair Trade Practices and Consumer Protection Law, and for causes of action sounding in contract and tort. However, the appeal before us is limited to Fahed's claims under the Louisiana Wage Payment Act, which was tried by the trial court separately via summary proceedings.

Fahed's claims arise from an agreement between himself and Ayesh to incorporate ASM for the purpose of operating a fast-food restaurant, PoBoy Express, in Pineville, Louisiana. The two parties were brothers-in-law, as Fahed was married to Ayesh's sister. Fahed claimed that Ayesh promised that he would be a co-owner of ASM and manager of PoBoy Express, for which he would earn $8,000.00 per month, plus a percentage of the net profits. He further claimed that Ayesh promised that his job duties would only be supervisory in nature and that he would work no more than forty hours per week.

In October 2014, ASM was incorporated, and the corporation assumed ownership of PoBoy Express. Fahed started working at the restaurant in November 2014, and within a couple of weeks, he claimed he was working fifty to sixty hours per week and his work duties had expanded to run the gambit of food preparation, shopping, cleaning, making deposits, and closing the registers each night. He further claimed that he received only $250.00 per week in wages. When

he failed to receive the amount promised him by Ayesh, Fahed terminated his employment with ASM on March 31, 2015.

On July 13, 2015, Fahed mailed a written demand to ASM and Ayesh, stating that Ayesh promised that in exchange for his involvement in the enterprise, his monthly salary would be $8,000.00, plus a percentage of the net profits. He said that during his five months' employment, he only received $5,000.00 of the $40,000.00 he should have received; thus, he claimed that ASM and Ayesh owed him $35,000.00 in unpaid wages and his share of the net profits for the five months.

At the start of the February 17, 2016 trial on the wage issue, the parties stipulated that Fahed's claim for wages was solely against ASM. After taking the matter under advisement, the trial court rendered written reasons for judgment on March 15, 2016, awarding Fahed $11,000.00 in unpaid wages and $1,500.00 in attorney fees, but denying his request for penalty wages. Judgment was rendered on March 22, 2016. Thereafter, Fahed filed a motion for new trial or, in the alternative, a motion for reconsideration. Following a May 9, 2016 hearing, the trial court denied Fahed's motion for new trial on the penalty and attorney fee issues, but granted it to designate the March 22, 2016 judgment as a final judgment. The trial court then ordered the parties to resubmit a judgment containing the final judgment language. The resubmitted judgment was rendered by the trial court on May 16, 2016. It is from this judgment that Fahed has appealed.

Fahed raises two assignments of error on appeal:

1.   The Trial Court clearly erred when it declined to award Fahed penalty wages.

2.   The Trial Court clearly erred when it awarded Fahed only $1,500.00 in attorneys fees without permitting him the

2

opportunity to introduced [sic] evidence to show that he was entitled to $27,112.00 in attorneys fees.

## OPINION

Under the Louisiana Wage Payment Act, an employer must pay the wages owed a terminated or resigned employee either on or before the next payday or within fifteen days of his resignation, whichever occurs first. La.R.S. 23:631(A). That statute further provides, in part:

> In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.

La.R.S. 23:631(B).

Failure to comply with the provisions of La.R.S. 23:631 subjects an employer to possible penalties and the assessment of reasonable attorney fees pursuant to La.R.S. 23:632, which provides:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

3

In *Winkle v. Advance Products & Systems, Inc.*, 98-694, pp. 14-15 (La.App. 3 Cir. 10/28/98), 721 So.2d 983, 990-91, this court stated the following with regards to the award of penalties pursuant to La.R.S. 23:632:

> Under the provisions of La.R.S. 23:632, to recover penalty wages, the claimant must show that "(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Hebert* [*v. Ins.Ctr., Inc.*], 97-298, p. 9 [(La.App. 3 Cir. 1/7/98]; 706 So.2d [1007,] 1013. Although equitable defenses are not expressly provided for in the statute, the Louisiana Supreme Court has interpreted the statute as a "coercive means" to compel an employer to pay an employee within the time limits set forth in La.R.S. 23:631. *Beard* [*v. Summit Inst. for Pulmonary Med. & Rehab., Inc.*], 97-1784, p. 7 [(La. 3/4/98)]; 707 So.2d [1233,] 1236. Accordingly, the court has held "that the penalty must be strictly construed and may yield to equitable defenses." *Id.* If there is "'a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability'", the court may refrain from imposing penalty wages upon the employer. *Id. quoting Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555, 557 (La.1978). "Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." *Beard*, 97-1784, p. 9; 707 So.2d at 1237. "'Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties.'" *Hebert*, 97-298, p. 9; 706 So.2d at 1013 (quoting *Barrilleaux v. Franklin Found. Hosp.*, 96-0343 (La.App. 1 Cir. 11/8/96); 683 So.2d 348, *writ denied*, 96-2885 (La.1/24/97); 686 So.2d 864). The issue of [the employer's] bad faith is a question of fact. Accordingly, it is subject to the manifest error standard of review. *Hebert*, 97-298; 706 So.2d 1007; *Domite v. Imperial Trading Co., Inc.*, 94-16 (La.App. 3 Cir. 8/3/94); 641 So.2d 715.

## PENALTY WAGES

In his first assignment of error, Fahed argues that the trial court clearly erred in denying his request for penalty wages because it found that although ASM admitted he was owed $750.00 per week, it only proved that he was paid $250.00 per week. It is noted that Fahed does not appeal the $11,000.00 awarded by the trial court as opposed to his demand of over $35,000.00, including profits from the business. Thus, this portion of the trial court's judgment remains in force and undisturbed.

4

Other than his claim regarding the promised salary of $8,000.00 per month, which he admits was an oral agreement not reduced to writing, Fahed testified that he only received $250.00 per week the entire time he worked at PoBoy Express. He stated that he was paid in cash, except for the last month of his employment, when he was paid by check. No written receipts were produced by either party during the trial as to any of the cash payments. Fahed testified that his 2014 W-2 reports that he received $1,500.00 in wages for November and December 2014, and his 2015 W-2 reports that he received $3,150.00 for January, February, and March 2015. Although admitted into evidence, he stated that he never received the IRS Form 1099s from ASM for the years 2014 and 2015, reporting that it paid him $4,000.00 and $6,000.00, respectively, in non-employment compensation. Fahed did, however, admit that both he and his wife signed off on their joint 2014 income tax return, which included the $4,000.00 as business income received by them. He further stated that he had not yet filed his 2015 income tax return due to this litigation.

Ayesh admitted that Fahed was paid $750.00 per week during his employment at PoBoy Express, but denied that he promised to pay him the claimed $8,000.00 monthly salary plus profits. He testified that Fahed was paid by both cash and check each week: $500.00 in cash and a $250.00 check for a total of $750.00. Ayesh stated that the weekly cash payments of $500.00 equaled the $4,000.00 and $6,000.00 amounts shown on Fahed's 2014 and 2015 1099s. Although he admitted that he could not prove the weekly $500.00 cash payments to Fahed, he claimed that Patricia Terrell, PoBoy Express's manager, knew and could verify the payments. Ayesh further admitted that a check listed in ASM's December payroll journal, showing that Fahed was paid $1,500.00 on December 31, 2014, was made up by his accountant on his instructions, to represent the

5

weekly $250.00 paid to Fahed by check. Ayesh also admitted that in his verified answers to interrogatories, this check was paid to Fahed on December 31, 2014. Moreover, he admitted that by paying its employees both cash and checks, ASM knowingly and willingly underreported their incomes to the federal and state governments.

Ayesh further testified that it was not possible that Fahed received only $250.00 per week in wages. He explained that when Fahed filed his 2014 tax return, he called to complain that his income tax was so low that he would not receive a refund. Ayesh said that he told Fahed that because he had paid him the $4,000.00 in 2014, he would give him a 1099. Again, Fahed claimed the $4,000.00 sum in his 2014 income tax filing with the IRS. According to Ayesh, this boosted Fahed's 2014 refund to approximately $1,500.00.

Patricia Terrell testified that she handled PoBoy Express's payroll. However, she stated that she did not handle Fahed's wages nor had she ever been involved in or observed the manner in which Fahed was paid.

Alfred Huthnance, an Alexandria, Louisiana accountant, testified that he has prepared all of ASM's tax documents and weekly payroll since its incorporation, but he admitted that he has no independent knowledge of its operation. He stated that all of the information he utilizes in keeping its books and in the preparation of its tax documents is provided by Ayesh. Although he was initially approached by both Fahed and Ayesh about incorporating ASM, he said that once it was incorporated he dealt strictly with Ayesh.

Huthnance testified that the total reported wages paid by ASM in 2014 amounted to $12,724.00, as reported in its 2014 federal tax return, its 2014 annual federal unemployment tax return, its fourth quarter 2014 federal tax return, and its 2014 W-3 transmittal of wage and tax statements to the Social Security

6

Administration. In regards to Fahed, he stated that ASM's payroll journal indicates that he was paid wages of $1,500.00 on December 31, 2014, by Check 1090, which amount was included in its $12,724.00 total wage amount for 2014. However, Huthnance admitted that he created Check 1090 to account for the cash payment of wages Ayesh reported to him as having been paid to Fahed, but that he had no check stub to document the payment.

Huthnance also testified that ASM's 2015 payroll journal shows that Fahed received six checks in 2015: Check 1129 for $1,200.00 on January 31, 2015; Check 1185 for $800.00 on February 28, 2015; Check 5007 for $300.00 on March 2, 2015; Check 5011 for $300.00 on March 9, 2015; Check 5014 for $300.00 on March 16, 2015; and Check 5019 for $250.00 on March 23, 2015. As he also did for 2014, he stated that the first two checks were made up because the amounts were based on statements made by Ayesh about cash payments to Fahed for wages.

Huthnance testified that Fahed also received 1099s from ASM in 2014 and 2015, indicating that he received non-employment compensation from it in the amounts of $4,000.00 and $6,000.00 respectively. He stated that these amounts were based solely on statements by Ayesh, and he had no proof that these amounts were actually paid to Fahed. Huthnance explained that the compensation listed on a 1099-Miscellaneous Income Tax Form differs from that shown on a W-2 because it has no taxes deducted from its amount. He agreed that an employer is required to report any income an employee earns through the performance of services on a W-2, whereas non-employment compensation is reported on a 1099. Additionally, he stated that an employer would not include any amounts paid via a 1099 in its reported amount of paid salaries and wages on its corporate tax return. Rather, he said that it would be listed as a deduction, such as for business expenses or contract labor. Huthnance admitted that Fahed's $4,000.00 1099 income was not reported

7

on ASM's 2014 corporate tax return; however, he said that it should have been included and that the failure to do so lay with his office and was not the fault of Ayesh.

Huthnance testified that his office also prepared Fahed and his wife's 2014 joint personal tax return. He stated that the return was prepared based on information received from the couple and included both Fahed's W-2 wages and the $4,000.00 1099 income he received from ASM. He said that Fahed and his wife both signed and received a copy of the tax return, but neither questioned him about the reported 1099 income. Huthnance testified that the $4,000.00 from the 1099 was reported as business profit or loss on Schedule C, based on information he received from both Fahed and Ayesh. The form, which lists "delivery" as Fahed's principal business or profession, reports the $4,000.00 as gross income. It further lists $1,600.00 in expenses: $400.00 for repair and maintenance and $1,200.00 as other expenses. Huthnance said that he assumed, based on the nature of Fahed's business, that the $400.00 repair and maintenance expense was related to his vehicle and that the $1,200.00 other expense was for fuel. Finally, he stated that due to this litigation, his office had not yet prepared the 2015 income tax return for Fahed and his wife and that Fahed was issued a 1099 from ASM, which reported non-employment compensation in the amount of $6,000.00.

Huthnance agreed that it was common for employers in the restaurant field to pay their employees both cash and checks. He further agreed that although he cautions them against paying wages in cash, the decision ultimately rests with his clients. He stated that Ayesh reported to him that Fahed's wages were paid both in cash and check, and he assumed that ASM was paying some of its employees in cash.

In its reasons for judgment, the trial court held that Ayesh admitted that

8

ASM owed Fahed weekly wages of $750.00 during the approximately twenty-two weeks he was employed. In finding that ASM failed to prove that it actually paid Fahed $750.00 per week, the trial court stated:

> ASM failed to provide documentation showing proof of paying Fahed $750 a week (cancelled checks, etc.). Their claim is unsupported by the amount of wages reported on ASM's tax documents. The W-2s issued by ASM to Fahed show only that he was paid $1,500 for "wages, tips, and other compensation" for about nine weeks of work in 2014 and $3,150 for "wages, tips, and other compensation" for about thirteen weeks of work in 2015. Likewise, ASM's W-3s, its income tax return, its payroll records, and the testimony of its accountant, A.H. Huthnance, all support the same amount in wages reported on ASM's W-2s issued to Fahed and do not support ASM's claim that it paid Fahed $750 a week. The evidence of the amounts ASM paid to Fahed for his employment services is the tax documents filed with the IRS and the Louisiana Department of Revenue. Given the fact that ASM Food only offered evidence that Fahed was paid $250 a week, this means that ASM still owes Fahed $11,000 in past due wages.

(Footnote omitted.)

> However, in denying Fahed's claim for penalty wages, the trial court stated:

> The burden of proof rests upon plaintiff to establish by a preponderance of the evidence the facts upon which he relies to support his claim for an award of penalties under La.R.S. 23:632. Two of these essential elements of proof are that wages actually are owed to plaintiff and that such wages have not been paid. *Harrison v. First Nat. Funeral Homes, Inc.*, 244 So.2d 102 (La. Ct. App.1971). A good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability permits a court to decline to impose penalty wages on an employer.

> Here, there are clear disputes as to the oral agreement between Fahed and Ayesh and Fahed failed to meet his burden of proof regarding the terms of their oral agreement. The Court finds this enough to justify ASM Food resisting the demands of Fahed and declines to award any penalty wages.

Pursuant to La.R.S. 23:631, ASM was obligated to pay Fahed any undisputed wages owed to him by the next payday or within fifteen days of his resignation, whichever occurred first. In this instance, the amount disputed between the parties was the $8,000.00 monthly salary plus profits claimed by

Fahed. Ayesh acknowledged that ASM agreed to pay Fahed $750.00 per week. This court notes that this admission by Ayesh is the only evidence upon which the trial court could have concluded that Fahed was owed that amount in weekly wages. After accepting that Fahed's weekly wages were $750.00, but further finding that he was only paid $250.00 per week, the trial court concluded that he was owed $11,000.00 in unpaid wages by ASM. However, based on Fahed's claim that he was owed $8,000.00 per month rather than $750.00 per week, the trial court held that there was a bona fide dispute regarding the amount of wages owed him; thus, it denied his request for penalty wages.

Based on our review of the record, we find that the trial court was not clearly wrong in denying Fahed's request for penalty wages. The trial court concluded, as a matter of fact, that a bona fide dispute existed between the parties as to the amount of wages owed and refused to award penalty wages. Fahed offered no written proof of the agreement for the $8,000.00 per month salary plus profits from the business. This amount differs significantly from the $750.00 per week wage the trial court concluded was owed based on Ayesh's admission. Indeed, the evidence at trial revealed a secretive and disorganized relationship between Fahed, Ayesh, and ASM due to the manner in which they chose to conduct business. No receipts were created or demanded for cash payments, while other written documents, such as check entries and 1099s, were created after the fact in an attempt to document prior cash payments. The trial court was presented with a situation remarkably similar to that presented in a wage and penalty claim under a precursor to La.R.S. 23:631 and 23:632[1] in *Bridges v. McClenaghan*, 14 So.2d 652 (La.App. 2 Cir. 1943). Therein, the second circuit noted the difficulty experienced by the trial court in making its factual determinations by stating, "The

---

[1] 1936 La. Acts No. 138, § 1.

10

true facts of this case are most difficult to determine, due to the unbusiness-like method—if there was any method at all—in which plaintiff and defendant conducted their relations." *Id.* at 653. In upholding the trial court's denial of penalty wages and attorney fees, the court stated, "The loose, haphazard manner in which plaintiff and defendant kept the records of their affairs is such as to always end in litigation. Plaintiff had no record or knowledge of what amount was due him when he resigned on September 20, 1941, and defendant was in no better position than he was." *Id.* at 654. The trial court in this matter was in an equally difficult situation, and it cannot be concluded that it was clearly wrong in denying penalty wages given the relative difficulty it had in determining the actual wages owed to Fahed at the time of his resignation. As in *Bridges*, there was indeed a bona fide dispute as to the amount ASM owed Fahed, such that this litigation was inevitable.

This court further notes that there was evidence to support Ayesh's claim that ASM paid Fahed more than the claimed $250.00 per week, as evidenced by the $4,000.00 reported in his 2014 1099, which Fahed acknowledged in his tax return that year. The evidence supports the trial court's decision to deny penalty wages pursuant to La.R.S. 23:631, which decision is not to be disturbed absent a showing of manifest error. Accordingly, we find no error in the trial court's denial of Fahed's request for penalty wages, and the judgment of the trial court is affirmed on this issue.

## ATTORNEY FEES

In his second assignment of error, Fahed argues that the trial court erred by awarding him only $1,500.00 in attorney fees. We disagree.

Louisiana Revised Statutes 23:632 provides that an employee, who brings a well-founded suit for unpaid wages, is entitled to reasonable attorney fees. A well-

founded suit is one in which the employee prevails in the award of unpaid wages. *Beard v. Summit Inst. for Pulmonary Med. & Rehab., Inc.,* 97-1784 (La. 3/4/98), 707 So.2d 1233. In *Stanley v. Crowell & Owens, LLC,* 15-395, pp. 3-4 (La.App. 3 Cir. 10/7/15), 175 So.3d 1204, 1207-08, *writ denied,* 15-2035 (La. 1/8/16), 184 So.3d 694, this court reviewed the law regarding appellate review of an attorney fee award:

> This court reviews the trial court's award of attorney fees under the abuse of discretion standard. *Covington v. McNeese State Univ.,* 12-2182 (La.5/7/13), 118 So.3d 343. In *Covington,* the supreme court stated that in applying that standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact." *Id.* at 351. Still, we review the trial court's factual findings in reaching the award at issue pursuant to the manifest error/clearly wrong standard. *Stobart v. State, Dep't of Trans. & Dev.,* 617 So.2d 880 (La.1993); *Cottonport Bank v. Keller Prop. Mgmt., LLC,* 13-649 (La.App. 3 Cir. 12/11/13), 128 So.3d 668.
>
> Additionally, the trial court has discretion in determining the amount of an attorney fee based upon its own knowledge, the evidence, and its observation of the case and the record. *Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc.,* 32,441 (La.App. 2 Cir. 12/8/99), 748 So.2d 594. In fact, a court does not have to hear evidence concerning the time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. *Burford v. Burford,* 95-2318 (La.App. 1 Cir. 06/28/96), 677 So.2d 722. When the nature and extent of the services of an attorney are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value even in the absence of expert testimony. *Mitchell v. Turner,* 588 So.2d 1305 (La.App. 2 Cir.1991).

The factors to be considered in determining the reasonableness of an attorney fee award on appeal include:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*State, Dep't of Transp. & Dev. v. Williamson,* 597 So.2d 439, 442 (La.1992).

In awarding Fahed attorney fees, the trial court was not required to set a hearing in order to determine what amount would be reasonable. In making such determinations, the trial court is entitled to much discretion, and a review of the record reveals, as noted by the trial court in its reasons for judgment, that the wage claim was part and parcel of the much broader claims alleged by Fahed in his petition. This particular aspect of his claim was separated from the others and tried summarily, leaving the remaining claims to be litigated at a later date. The issue in this part of the dispute was not difficult, and while the amount set may be on the low side, based on the outcome obtained, we do not find that it was an abuse of the trial court's discretion. Accordingly, the judgment of the trial court is affirmed.

## DISPOSITION

Based on the foregoing, we affirm the trial court's denial of Ali Fahed's claim for penalty wages against ASM Food, Inc. and the award of $1,500.00 in attorney fees. The costs of appeal are assessed to Ali Fahed.

**AFFIRMED.**