# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-947

BUSTER'S FROZEN CUSTARD, LLC

VERSUS

LANCASTER MANUFACTURING, INC.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20141926
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and David Kent Savoie, Judges.

AFFIRMED AS AMENDED.

Ashley W. Phillips
The Phillips Law Firm LLC
1538 W. Pinhook Road, Suite 102
Lafayette, LA 70503
(337) 412-6248
COUNSEL FOR PLAINTIFF/APPELLANT:
    Buster's Frozen Custard, LLC

**Dustin B. Gibson**
**Dustin B. Gibson Law, LLC**
**1538 W. Pinhook Road, Suite 103**
**Lafayette, LA 70503**
**(337) 501-2418**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Ashley W. Phillips**

**Edward H. Bergin**
**Jones Walker LLP**
**201 St. Charles Avenue, 49th Floor**
**New Orleans, LA 70170-5100**
**(504) 582-8222**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lancaster Manufacturing, Inc.**
    **Antony Carey**

**Michele Whitesell Crosby**
**Jones Walker LLP**
**8555 United Plaza Boulevard, 5th Floor**
**Baton Rouge, LA 70809**
**(225) 248-2092**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lancaster Manufacturing, Inc.**
    **Antony Carey**

**Nadia de la Houssaye**
**Donald W. Washington**
**Jones Walker LLP**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA 70502-3408**
**(337) 593-7600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lancaster Manufacturing, Inc.**
    **Antony Carey**

**PETERS, J.**

In this procedurally complicated litigation, Buster's Frozen Custard, LLC appeals the trial court's judgment annulling a previously rendered money judgment in its favor and against Lancaster Manufacturing, Inc. and Antony Carey; and Buster's Frozen Custard, LLC's attorney of record, Ashley W. Phillips, challenges the validity of a judgment for attorney fees rendered against him personally and in favor of Lancaster Manufacturing, Inc. and Antony Carey as an ancillary part of the annulment action. Lancaster Manufacturing, Inc. and Antony Carey answered the appeal and requested an increase in the amount of the attorney fees awarded and for additional attorney fees for their work on appeal. For the following reasons, we affirm the trial court judgment annulling the previously rendered money judgment; amend the trial court judgment awarding attorney fees to Lancaster Manufacturing, Inc. and Antony Carey to correct a mathematical error in the calculation of the attorney fees, and affirm the judgment as amended; and reject the request of Lancaster Manufacturing, Inc. and Antony Carey for an increase of the attorney fees awarded by the trial court, and for an award of attorney fees for work performed on appeal.

**DISCUSSION OF THE PROCEDURAL RECORD**

Buster's Frozen Custard, LLC (Buster's LLC) is a Louisiana limited liability company which operates a retail mobile food distribution business in Lafayette, Louisiana. Ashley W. Phillips is a Lafayette, Louisiana attorney at law. Lancaster Manufacturing, Inc. (Lancaster) is a Michigan corporation who supplies and installs refrigeration equipment for its customers, and Antony Carey is a resident of the state of Michigan who is described in Buster's LLC's pleadings as the agent for Lancaster. Lancaster and Mr. Carey are represented by Jones Walker, LLP (Jones Walker), a Louisiana law firm with offices in numerous places in the state,

including Lafayette, Louisiana. The underlying dispute giving rise to the judgment, which became the subject of the nullity action now before us, was based on an April 2013 contract entered into by Buster's LLC and Lancaster, wherein Lancaster agreed to supply and install refrigeration equipment in a mobile food truck owned and operated by Buster's LLC in Lafayette, Louisiana. Lancaster provided and installed the equipment called for in the contract.[1]

On April 15, 2014, Mr. Phillips filed a suit for damages on behalf of Buster's LLC in Lafayette, Louisiana, naming Lancaster and Mr. Carey as defendants. In the suit, Buster's LLC asserted that the equipment supplied and installed by Lancaster was not fit for the particular use required by Buster's LLC, and/or the equipment contained a redhibitory defect. The two out-of-state defendants were served on May 5, 2014, by certified mail pursuant to La.R.S. 13:3204(A).

On May 14, 2014, Lancaster and Mr. Carey solicited the advice and counsel of Nadia de la Houssaye, a Lafayette, Louisiana attorney and a partner in Jones Walker. Ms. de la Houssaye informed the defendants that due to a medical condition she was working limited hours, but that she would contact Mr. Phillips and see if anything could be done to settle the matter.

The same day, Ms. de la Houssaye spoke by telephone with Mr. Phillips, and explained to him that her personal medical condition precluded her from representing the defendants as trial counsel, but that she was willing to attempt to negotiate an amicable settlement without further litigation if he were willing to work toward that end. According to Ms. de la Houssaye, Mr. Phillips expressed an interest in pursuing settlement negotiations and agreed to give her clients an

---

[1] No written contract was entered into the record as evidence of its contents.

2

extension of time in which to plead.[2]  Based on this understanding, neither Lancaster nor Mr. Carey filed any responsive pleadings to the pending suit.

Three days later, on May 17, 2014, Mr. Phillips sent an e-mail to Ms. de la Houssaye in which he began by stating:

> Please do not feel obligated to respond to this email without taking some time to recuperate. . . . I want to thank you for reaching out to me on this matter.  I hope we may be able to reach an amicable resolution.  I do not have a firm offer at this time.  We are waiting on some estimates in regards to the cost of removal of the installed equipment.

Mr. Phillips then listed a tentative offer and ended the e-mail with the comment that, "I will forward invoices and estimates to your office when I have them."

On May 21, 2014, Mr. Phillips forwarded a second e-mail to Ms. de la Houssaye, with attachments representing the claimed removal and replacement costs.  These amounts, together with the amount itemized in the May 17, 2014 e-mail, were described to Ms. de la Houssaye as "a final offer to settle this matter. Please confer with Mr. Carey and let me know if we can reach an agreement."

On June 12, 2014, Mr. Phillips and Ms. de la Houssaye had further settlement discussions which Ms. de la Houssaye confirmed by e-mail that same day.  The e-mail set forth the counteroffer in detail and requested that Mr. Phillips "[p]lease advise as to how your clients want to proceed."  At 1:12 p.m. the next day, Mr. Phillips responded to Ms. de la Houssaye by e-mail, stating that his clients were "very receptive to Mr. Carey's offer."  However, Mr. Phillips followed that statement by listing three issues which his clients wanted to address; by setting forth those portions of the June 12, 2014 counteroffer that his clients did not agree with; and by setting out with particularity four additions to the settlement offer.  At 2:58 p.m. that same day, Mr. Phillips sent a second e-mail to Ms. de la

---

[2] Mr. Phillips expressly denies giving Ms. de la Houssaye an extension of time to file responsive pleadings.

Houssaye wherein he stated: "Just as an aside, I am also working towards settling this matter as quickly as possible and hopefully without having to waste time in court proceedings. I believe we have the same goal here."

On the same day he provided Ms. de la Houssaye with the two e-mails which expressed his desire to avoid court proceedings, Mr. Phillips caused a preliminary default to be entered by the trial court against Lancaster and Mr. Carey.[3] On June 26, 2014, the trial court set a confirmation hearing on the default judgment. Mr. Phillips failed to mention this setting to Ms. de la Houssaye.

At the July 14, 2014 confirmation hearing, Mr. Phillips offered evidence in support of his clients' claim for damages, but made no mention of the ongoing settlement negotiations with Ms. de la Houssaye. In fact, Mr. Phillips executed an affidavit entitled "**ATTORNEY CERTIFICATION**[,]" wherein he stated, among many other things, that "[n]o appearance by way of formal answer, enrollment of counsel, *or otherwise* has been made by either defendant at the time of this certification."[4] (Emphasis added.)

At the confirmation hearing, the trial court rendered judgment in favor of Buster's LLC and against Lancaster and Mr. Carey in the amount of $22,419.35, together with an additional award of $5,000.00 as attorney fees. The trial court executed a judgment to that effect the same day. The Lafayette Parish Clerk of Court's office mailed notice of judgment and a certified copy of the judgment to Lancaster and Mr. Carey on July 21, 2014. Additionally, Buster's LLC caused the

---

[3] The clerk of court's filing stamp reflects that the motion for the entry of the preliminary default had been filed late on the afternoon of June 12, 2014, and that the trial court granted the motion the next day.

[4] The certification was dated June 26, 2014.

judgment to be recorded in the mortgage records of Lafayette Parish, Louisiana, and Delta County, Michigan.[5]

While the default confirmation proceedings moved forward without her knowledge, Ms. de la Houssaye continued to negotiate in good faith with Mr. Phillips. On July 10, 2014, they exchanged e-mails, and on July 11, 2014, Mr. Phillips informed Ms. de la Houssaye that he had a meeting scheduled with his clients on Tuesday, July 15, 2014, and that he would discuss the matter with them. He did not mention that he would be seeing his clients on the day before for the scheduled confirmation hearing.

On Sunday, July 20, 2014, Mr. Phillips e-mailed Ms. de la Houssaye to inform her that he had spoken with his clients and that they would settle for a total of $19,980.40, and if the amount were not paid within thirty days he would "have no other choice but to proceed on this matter." Mr. Phillips neglected to tell Ms. de la Houssaye that he had already obtained a judgment against her clients six days before.

Ms. de la Houssaye received a telephone call from her clients on July 24, 2014, informing her that they had received the notice of judgment mailed to them by the clerk of court's office. She immediately telephoned Mr. Phillips who confirmed to her that he had obtained the default judgment, and he refused to cancel it.

Two days later, Mr. Phillips sent Ms. de la Houssaye an e-mail stating the following:

> I have no intention of getting into an argument with you. My clients have accepted Mr. Carey's offer. If he tenders payment within the 30 days I will cancel the judgment filed in Delta [C]ounty

---

[5] The record reflects that Buster's LLC recorded the judgment in Louisiana on July 21, 2014, and in Michigan on or about July 21, 2014.

5

Michigan.  If not, I will proceed to enforce it in full.  That's really all that I have to say on the matter.

Later that same morning, Ms. de la Houssaye responded by e-mail with the following:

> Ashley, regardless of the settlement, taking a default judgment after granting an indefinite extension of time and during active settlement negotiations without telling opposing counsel is wrong and unethical.  Extorting a party by threatening to use a wrongfully obtained default to enforce a settlement is further ill practice.  This behavior shames our profession.  I have no choice but to bring it to the court's attention via a petition to nullify judgment for ill practices.  I will let the court decide whether it is a reportable ethics offense.  Regarding the settlement, your acceptance changed the original offer by adding a 30 day payment provision.  My client accepts the condition provided the equipment is returned within 30 days of receipt of funds.  Please advise if you [sic] clients accept this condition.  I will file the Petition to Nullify Judgment during the interim.

After some additional negotiations of some peripheral issues, the parties ultimately consummated the settlement on August 12, 2014.  Other than the fact of the settlement, the record does not contain any formal written evidence of its terms.

On August 1, 2014, Lancaster and Mr. Carey filed a pleading in the same action giving rise to the July 14, 2014 default judgment, entitled "**PETITION TO ANNUL JUDGMENT AND FOR INJUNCTIVE RELIEF**[.]"  The pleading named only Buster's LLC as a defendant and sought nullification of that judgment based on the assertion that it had been acquired by ill practices on the part of Buster's LLC, as well as a judgment for attorney fees pursuant to La.Code Civ.P. art. 2004(C), and expenses pursuant to La.Code Civ.P. art. 863.  Additionally, Lancaster and Mr. Carey sought injunctive relief based on the fear that Buster's LLC might attempt to execute on the judgment before the nullity action could be heard.  In the August 25, 2014 answer to the annulment petition, Buster's LLC generally denied the assertions found therein, objected to the introduction of certain correspondence referenced in the petition, and asserted compromise of the

claim as an affirmative defense.[6]

In their August 1, 2014 pleading, Lancaster and Mr. Carey sought summary relief on all of their issues, and to that end, they caused the trial court to set a show cause hearing for September 8, 2014. At that hearing, the parties stipulated to the right of Lancaster and Mr. Carey to injunctive relief, and the trial court entered judgment granting a preliminary and permanent injunction prohibiting Buster's LLC from executing on the judgment. The trial court granted Buster's LLC a continuance on the remaining issues, and the judgment executed by the trial court that same day ordered that Lancaster and Mr. Carey "follow ordinary procedures with regard to the remaining claims under the Petition to Annul Judgment."

On September 15, 2014, Mr. Phillips sent an e-mail to Ms. de la Houssaye and the other attorneys now involved in the litigation stating:

> I can save everyone a great deal of time and expense on this issue. My clients' interests have been protected under the settlement and I will be happy to consent to an absolute annulment of the default judgement [sic] provided that these issues regarding sanctions, attorney's fees be [sic] dismissed. Please advise.

Three days later, Mr. Phillips, acting on behalf of Buster's LLC, caused the judicial mortgage recorded in the Lafayette Parish records to be cancelled. The form executed by Mr. Phillips contained the statement that "[t]he said secured obligation has been paid or otherwise satisfied or extinguished and further the said judicial mortgage is hereby released." While Buster's LLC remained as a defendant in the litigation, it is at this point that as a practical matter, the litigation became more of a personal dispute between the attorneys.

While nothing in the record reveals the content of the continuing communication between Mr. Phillips and Ms. de la Houssaye, it is obvious that the

---

[6] This pleading marks the first and only reference to August 12, 2014, as the date the underlying dispute was resolved.

7

two attorneys were engaged in oral negotiations regarding the annulment of the default judgment, because on September 19, 2014, Mr. Phillips sent an e-mail at 5:31 p.m. regarding an apparent oral settlement offer from Ms. de la Houssaye. He began the e-mail by listing what he considered to be defenses to her assertions that he had engaged in ill practices, and then summarized his position by stating, "I will not be bullied by Ms. de la Houssaye or Jones Walker. You failed to provide adequate representation of your now client and these threats to me personally will no [sic] go unheard by the court." At 6:15 p.m. that same day, Ms. de la Houssaye sent an e-mail to Mr. Phillips, with what appears to be a written version of the settlement offer that they had been discussing for the past several days. The offer of settlement stated:

> While your "clients' interests have been protected under the settlement," your ill practices have forced our clients into a position of having to forever explain a publically recorded judgment against it. Recorded judgments simply cannot be erased from the public records. Thus, judicial resolution is necessary. Moreover, the time for "sav[ing] everyone a great deal of time and expense on this issue" unfortunately ended on July 25, 2014 when you refused to voluntarily set aside the July 14, 2014 default judgment obtained against our client by your ill practices. Jones Walker had no option but to expend thousands of dollars to formally petition the court to annul a final judgment that you should not have taken under the circumstances. In an attempt to move this dispute toward resolution as quickly and efficiently as possible, Jones Walker proposes the following:

> 1. You agree to an order and judgment (a) declaring that you wrongfully obtained a default against Lancaster and Antony Carey and (b) nullifying the July 14, 2014 final judgment under Louisiana Code of Civil Procedure article 2004 for ill practices.

> 2. You record, at your expense, the Court's Judgment of Nullity in every jurisdiction where you recorded the July 14, 2014 final judgment and provide us confirmation (a) of the recordation and (b) that the Judgment of Nullity is linked to the July 14, 2014 final judgment. This must be completed within 5 calendar days of the date of the Court's Judgment of Nullity.

> 3. You pay for time and expense incurred by Jones Walker to rectify your actions. Our legal fees far exceed $10,000.00. We are willing to accept $7,000.00 from you in complete satisfaction of

payment for attorneys' fees.

4. You pay all court costs and Michele Crosby's travel expenses. The travel expenses totaled $ 68.54.

5. You self-report your misconduct to the Louisiana Board of Ethics, with a copy to all parties, as well as Judge Castle, to alleviate any obligation on Jones Walker to report your misconduct.

Please seriously consider this proposal to resolve this matter completely. Otherwise, please (1) tell us who you plan to call at the trial on the Petition to Annul and (2) notice for deposition those witnesses you told Judge Castle you wished to depose so that we may obtain the court's earliest possible trial date.

On September 25, 2014, Mr. Phillips responded to the written settlement offer of September 19 with a certified mail letter to Donald Washington, another Jones Walker partner, wherein he stated:

As you are aware, the above captioned matter has been settled and the judgment cancelled in both Lafayette Parish and Rock County,[7] Michigan. Both of our clients' interests have been protected and no further proceedings are necessary between the parties. Insofar as the present action, I made an extremely equitable and reasonable offer to your firm on Monday September 15th, 2014 that would satisfy both of our clients' interests and minimize expenses on both sides. Clearly that offer is in the best interest of the parties. That offer will remain open for a period of 15 days from receipt of this letter. Please discuss that offer with your clients, Tony Carey and Lancaster Manufacturing, Inc., and notify my office of *their* response.

In response to the counteroffer forwarded to my office which requested that my clients pay in excess of $10,000.00 in attorney's fees, that I self-report myself to the disciplinary counsel, that I admit fraud and ill practices, etc. etc., the same is rejected.

This is not conduct in which we should be engaging as professionals. However, as it would appear that your firm intends to continue these proceedings, please be advised that I do not intend on scheduling depositions at this time, but fully the [sic] reserve right to do so in the future after written discovery. Please also find with this letter *drafts* of discovery requests to be filed in this matter should we be unable to settle this amicably.

The attached discovery requests included seven requests for admission, fourteen

---

[7] We assume this to be a typographical error as the record in the case indicates that the judgment was recorded in Delta County, Michigan.

interrogatories, and five requests for production. While some of these discovery vehicles purport to seek information pertinent to this litigation, most were obviously intended to seek potentially embarrassing information about Jones Walker's relationship with its clients, particularly Mr. Carey.

The record contains no evidence of any further efforts at settlement, and the matter finally went to trial on the nullity issue on March 23, 2015. In addition to receiving a number of exhibits into evidence, the trial court heard the testimony of Ms. de la Houssaye, Clarissa Long (Ms. de la Houssaye's paralegal), and Mr. Phillips. After considering the evidence presented, the trial court rendered judgment nullifying the July 14, 2014 judgment and awarding Lancaster and Mr. Carey attorney fees. With regard to the nullification issue, the trial court specifically found "that there was an ill practice used in this case and that a default was taken in the face of knowledge of active representation of a client and without notification of intent to do so." With regard to the attorney fees issue, the trial court concluded that Lancaster and Mr. Carey were entitled to an award of attorney fees based on La.Code Civ.P. art. 863.[8] However, the trial court did not set the amount of the attorney fee award, but reserved that issue for another day.

On May 4, 2015, the trial court issued its written judgment arising from the March 23 hearing. That judgment stated, in pertinent part, as follows:

> After considering the evidence, the testimony of Nadia de la Houssaye and Ashley W. Phillips, the applicable law, the filed pleadings, argument of counsel and for oral reasons assigned on March 23, 2015,
>
> **IT IS ORDERED, ADJUDGED AND DECREED** there be judgment in favor of Lancaster Manufacturing, Inc. and Antony Carey and against Buster's Frozen Custard on the Petition to Annul Judgment and for Injunctive Relief.

---

[8] The trial court made no mention of the attorney fees claim under La.Code Civ.P. art. 2004 or of the fact that Lancaster and Mr. Carey sought only the recovery of expenses under La.Code Civ.P. art. 863.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the final judgment confirming the default judgment against Lancaster Manufacturing, Inc. and Antony Carey rendered on July 14, 2014 and recorded in the Lafayette Parish mortgage records on July 21, 2014 under File Number 2014-00026961 is annulled for ill practices pursuant to Louisiana Code of Civil Procedure art. 2004.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Clerk of Court and Recorder for Lafayette Parish, Louisiana is authorized, instructed and directed to make an appropriate notation of this Judgment in the margin of his/her records under File Number 2014-00026961 and under File Number 2014-00034938, and to record and index this Judgment in the official public records of Lafayette Parish, Louisiana and cancel the default judgment against Lancaster Manufacturing, Inc. and Antony Carey rendered on July 14, 2014 and recorded in the Lafayette Parish mortgage records on July 21, 2014 under File Number 2014-00026961 from the official public records of Lafayette Parish, Louisiana as invalid and annulled for ill practices.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Buster's Frozen Custard and its counsel, at their sole expense, must request the Clerk of Court and Recorder for Delta County, Michigan to make an appropriate notation of this Judgment in the margin of his/her records and to record and index this Judgment in the official public records of Delta County, Michigan and cancel the default judgment against Lancaster Manufacturing, Inc. and Antony Carey rendered on July 14, 2014 and recorded on or about July 20, 2015[9] in the Delta County mortgage records from the official public records of Delta County, Michigan as invalid and annulled for ill practices.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Lancaster Manufacturing, Inc. and Antony Carey be and are hereby awarded attorneys' fees against Buster's Frozen Custard *and* its counsel, Ashley W. Phillips, pursuant to Louisiana Code of Civil Procedure article 863, the amount of which is deferred until a Motion to Set Amount of Attorneys' Fees is filed and set for hearing.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Buster's Frozen Custard is cast with all court costs.

(Emphasis added.)

The reference in the judgment to both Mr. Phillips and his client being

personally liable for an award of attorney fees is the first reference in any of the

---

[9] This is obviously a typographical error and should read "2014."

11

pleadings that liability might be imposed on Mr. Phillips. Also, despite the language of the judgment directly ordering the Lafayette Parish Clerk of Court to take the nullity steps ordered by the trial court, Mr. Phillips subsequently executed a second request for cancellation of the Lafayette Parish judicial mortgage to the Lafayette Parish Clerk of Court's office. The reason listed for the cancellation was "court order." This occurred on May 14, 2015, but the record contains no evidence concerning the cancellation of the Michigan judicial mortgage.[10]

On May 26, 2015, Lancaster and Mr. Carey filed a motion to have the assessment of the attorney fees issue set for a hearing. In support of the motion, they attached a memorandum, the affidavit of Michele Whitesell Crosby (one of the attorneys of record), and copies of a number of billing documents from the Jones Walker law firm. Neither litigant introduced these attachments or any other evidence at the hearing on the motion, although counsel for both sides referenced the attachments in their arguments to the trial court.

At the July 6, 2015 hearing, Mr. Phillips took issue with the hourly rate claimed by Jones Walker, but had no disagreement with the hours asserted by the firm through September of 2014, when the negotiations broke down, and further stated that he was "prepared to make restitution today for that amount." Any additional attorney fees or expenses, Mr. Phillips argued, should be precluded by the rejection of his offer of settlement tendered in September of 2014. On the other hand, counsel for Jones Walker argued that Mr. Phillips' rejection of the counteroffer necessitated the work required to bring the nullity matter to trial. However, when questioned by the trial court concerning a statement relating to actual client billing contained in Ms. Crosby's affidavit, trial counsel for Lancaster

---

[10] There seems to be no dispute but that Mr. Phillips and/or Buster's LLC complied with the trial court's judgment regarding the Michigan judgment as well.

and Mr. Carey[11] acknowledged that neither Lancaster nor Mr. Carey had been invoiced for those amounts, and that the clients would not be billed unless and until the amounts were recovered from Buster's LLC or Mr. Phillips.

The trial court accepted the statement in Ms. Crosby's affidavit that the total fee due was $34,042.50 and then proceeded to deduct $7,232.50 based on its examination of various entries found in the attachments. Using these factual findings, the trial court awarded Lancaster and Mr. Carey total attorney fees of $28,092.50 against Buster's LLC and Mr. Phillips.[12] However, when the trial court executed its July 17, 2015 judgment corresponding to the ruling, the language in the judgment was modified to reflect a judgment against Mr. Phillips only. That judgment reads, in pertinent part, as follows:

> The Court having considered the pleadings, briefs, applicable law, affidavit of Michele Whitesell Crosby, Jones Walker's billing records, Lancaster Exhibit numbers 13 and 16, and arguments presented in open court, and for oral reasons assigned on July 6, 2015,
>
> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion to Assess Attorneys' Fees filed by Lancaster Manufacturing, Inc. and Antony Carey is **GRANTED**.
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Lancaster Manufacturing, Inc. and Antony Carey are awarded the total sum of $28,092.50 against Buster's Frozen Custard's ~~and its~~ counsel, Ashley W. Phillips, for attorneys' fees and costs which this court found to be reasonable.

When originally typed, the pertinent portion of the last paragraph read "against Buster's Frozen Custard and its counsel, Ashley W. Phillips[.]" While this had the effect of removing Buster's LLC from any remaining liability in the litigation, nothing in the record suggests by what authority this change was made.

---

[11] The attorney representing Lancaster and Mr. Carey at the hearing to set attorney fees was Ms. Crosby, the same individual whose affidavit was used by the trial court to set the fees.

[12] As will be further noted later in this opinion, we recognize that the trial court's calculation of the attorney fees resulted in a mathematically incorrect result as $34,042.50 minus $7, 232.50 equals $26,810.00 and not $28,092.50.

13

On August 3, 2015, the trial court granted both Buster's LLC and Mr. Phillips a devolutive appeal of both the May 4, 2015 and July 17, 2015 judgments.[13]

In their appeal, Buster's LLC and Mr. Phillips raise the following assignments of error:

1. The trial court erred in annulling the default judgment obtained by Plaintiffs on July 14, 2014, and finding ill practices.

2. The trial court erred by failing to find that Defendants-Appellees failed to mitigate its damage(s).

3. The trial court erred by awarding attorney's fees and costs against Petitioner-Appellant, ASHLEY W. PHILLIPS in the amount of $28,092.50, as the attorney's fees were not 'reasonable' and were not incurred by the Defendants-Appellees.

4. The trial court erred by awarding attorney's fees and costs against Petitioner-Appellant, ASHLEY W. PHILLIPS as no testimony or evidence was introduced to support an award of attorney's fees.

## OPINION

Buster's LLC has a direct interest in only the first of the four assignments of error, and Mr. Phillips has no personal liability under that judgment. At the same time, the remaining three assignments of error relate to the attorney fees issue, and Buster's LLC was removed from liability in that matter by the modification of the July 17, 2015 judgment.

### *Assignment of Error Number One*

A final judgment "shall be annulled" for the vices of form set forth in La.Code Civ.P. art. 2002, and "may be annulled" for vices of substance as set forth in La.Code Civ.P. art. 2004. While the Editor's Notes that follow La.Code Civ.P.

---

[13] In the preamble to the July 31, 2015 motion for appeal, only Buster's LLC appears. However, the final paragraph of the motion suggests that "[Buster's LLC], and its attorney, Ashley W. Phillips pray that they be granted a devolutive appeal[.]" Also, the motion erroneously described the July 17, 2015 judgment as having been executed on June 15, 2015. There being no objection to Mr. Phillips appearance as an appellant or the insertion of the improper date, we find that the motion sufficiently awarded both a devolutive appeal of the two judgments at issue.

art. 2002 state that an action of nullity for a vice of form "may be asserted collaterally and at any time," the Editor's Notes that follow La.Code Civ.P. art. 2004 provide that an action of nullity for a vice of substance "must be asserted in a direct action, not collaterally[.]" Both articles provide that only a final judgment may be the subject of a nullity action. "A judgment that determines the merits in whole or in part is a final judgment." La.Code Civ.P. art. 1841.

The July 14, 2014 judgment Lancaster and Mr. Carey sought to have declared null was a final judgment, which they claimed contained a vice of substance in that it was obtained by ill practice. With regard to a judgment containing a vice of substance, La.Code Civ.P. art. 2004 provides:

> A. A final judgment obtained by fraud or ill practices may be annulled.
>
> B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
>
> C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.

While discussing the applicability of La.Code Civ.P. art. 2004 to judgments seeking to be annulled for fraud or ill practices, the supreme court in *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983) (citations omitted), stated:

> Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. . . . Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.

With regard to the standard of appellate review of a trial court's judgment in a vice of substance matter, the supreme court, in *Power Marketing Direct, Inc. v.*

15

*Foster*, 05-2023, p. 11 (La. 9/6/06), 938 So.2d 662, 670, stated that "trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer."

We first note that in its factual findings, the trial court found Ms. de la Houssaye's testimony more credible than that of Mr. Phillips, with regard to the content of their conversations, and especially with regard to whether Mr. Phillips agreed to give Lancaster and Mr. Carey an extension of time in which to file responsive pleadings. These factual findings are subject to the long-standing manifest error/clearly wrong standard of review and cannot be reversed absent a finding that no factual basis exists for the trial court's finding, and that the record establishes that the trial court's finding is clearly wrong or manifestly erroneous. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993).

In his testimony, Mr. Phillips denied much of Ms. de la Houssaye's testimony concerning the content of their telephone conversations and professed not to remember other aspects. He did acknowledge having settlement communications with Ms. de la Houssaye, but when questioned concerning why he pursued the default judgment, he alternately claimed that the settlement negotiations "were stalling" or that he doubted Ms. de la Houssaye's representation in the first place. In the oral reasons for judgment, the trial court went to great lengths to express its factual findings and negative view of Mr. Phillips' actions. Those reasons deserve being set out in full:

> All right. Well, this is a very sad case. And, Mr. Phillips, I'm really distressed with some of the things you said today. And I realize you're young to the practice of law. But to make comments like you were trying to protect your clients by any means possible. Those means don't go to the point of doing something unethical or unprofessional.
>
> And to say that representation was questionable? When an attorney contacts another attorney on behalf of a client, that's

16

representation. And to say that she would have to enroll -- I mean, I don't know how long you've been in the practice of law, but I practiced 23 years before I became a judge. And it is quite commonplace that you call another attorney, indicate that you're going to represent the client, and ask for an extension. You never enroll until you file the answer. So, I mean, that's just -- that's just a bizarre comment.

And, you know, to say, well, she might have been representing them, but then I didn't hear from her, so I just took a default. Once you, as an attorney, engage another professional, you have an obligation to that professional, not just to your client but to the profession.

And so, if you were not pleased with the fact that there was no communications, your minimal requirement was to contact Ms. Delahoussaye [sic] and say, I'm not pleased with the fact that negotiations have shut down, and, therefore, I want to do something about it.

But the record reveals that you actually took the default judgment in June, when y'all were actively talking about -- I mean, you might not have confirmed it until later. And the only reason you didn't confirm it until later is because the duty judge refused to sign it as a 1702 and set it for hearing. So that's why the delay was.

Otherwise, you were trying to confirm it at that time as a 1702, from what I saw in the record. Which, you know, again, I mean, taking the default judgment was the point where you violated what your obligation was to other counsel to say, look, I am not happy with how this is going, and, if you don't answer, I'm going to default. You did none of that.

And so you certainly lulled Ms. Delahoussaye [sic] into the belief that you all were not going to proceed with litigation and that y'all were going to explore all avenues of settlement. Again, if you were not pleased with settlement, your minimal obligation was to call opposing counsel and say that, not just to say, well, I think I'll count so many days, and, when I don't like it anymore, I'll confirm the default judgment.

I mean, that's a basic premise of, you know, ethics in our profession, is that you don't mislead another. And, you know, at best, giving you the benefit of the doubt, it was misleading.

It almost looks like you did it on purpose. Because, you know, you've got all these discussions going on, and then you're surreptitiously taking defaults and still talking to them. But I'm going to give you the benefit of the doubt that you were -- that you -- you know, it was a misleading and -- But, even if that's the case, you talk to her. You knew she was representing a client. She was negotiating

17

on behalf of the client. How can you say her representation was dubious?

She may have said, I'm not -- I don't intend to enroll if this thing goes forward, but she was clearly acting on behalf of a client in even talking to you. And so, at a minimum, you had the obligation to tell her once you decided that negotiations weren't going to go forward.

So, I mean, you know, it's very distressing. And it's very distressing, because, even though all this has happened, you persist in your statement that you didn't have the obligation. I just -- It just flabbergasts me, Mr. Phillips, that you would think that another attorney could do that -- that one attorney could do that to another and not feel that you had an obligation to say, look, you know, you're negotiating for this client, and I'm going to tell you negotiations are over, I want an answer, now.

So, you know, there are many cases -- and I'm looking at Kem Search[, Inc.] Versus Sheffield[, 434 So.2d 1067] -- where there isn't even a conversation with an attorney but a conversation with an unrepresented litigant, where an attorney's name is mentioned. And they say, you know, in that situation, the judgment's got to be set aside, because enforcement would be unconscionable and inequitable.

But, you know, in this case, it's clear that Ms. Delahoussaye [sic] and her client were relying on your representation that you were dealing in good faith negotiations. And so, to throw a default in there in the middle of that -- I'm sorry -- this Court finds that's an ill practice. It's just -- It's not -- There's no way to justify it, no possible way to justify it, based on the facts that I see in this case.

And, as I said, what's more distressing is that you're young and maybe you didn't understand, but then, looking at this record, from the time that it happened going forward, your continued digging in your heels and saying you were doing this because it was in the best interest of your clients. Well, there might be a lot of things that are in the best interest of clients, but they're not legal, and we don't do them, as lawyers.

So I am going to nullify the judgment. I do find that there was an ill practice used in this case and that a default was taken in the face of knowledge of active representation of a client and without notification of intent to do so.

We find that the record overwhelmingly supports the trial court's factual findings and judgment, as does the jurisprudence. The trial court referenced the supreme court's decision in *Kem Search, Inc.*, 434 So.2d 1067, as authority for its

18

decision, and we find that case to be directly on point. In that case, the supreme court found ill practices because the defendant contacted plaintiff's counsel to inform him "that he had several defenses to the lawsuit and would like to discuss a compromise before any action was taken on the suit." *Id.* at 1069. This phone conversation was followed by a letter from the defendant confirming plaintiff's counsel's granting of additional time for the defendant to "obtain the services of an attorney and to file responsive pleadings." *Id.* The defendant went on to state in the letter, "However, before proceeding with contested litigation, I would like an opportunity to review this matter with you with the view in mind of working out some amicable settlement." *Id.* Plaintiff's counsel's reply letter stated, "I would like to have an answer filed in the record so we can proceed as rapidly as possible should our discussions fail to be productive." *Id.* Plaintiff's counsel then took a default judgment against the defendant without providing him notice. The supreme court held that:

> [A]lthough Sheffield could have more prudently protected his rights by filing responsive pleadings to the petition, we conclude that the enforcement of the default judgment is nevertheless unconscionable, because Sheffield failed to act due to his mistaken and not unreasonable impression that Kem Search's attorney would give him an opportunity to file pleadings if his settlement overtures were rejected.

*Id.* at 1071. The supreme court also held that plaintiff's request to have an answer filed "was not sufficient to dispel Sheffield's reasonable belief" that an agreement existed between the parties that would allow him to file pleadings if the settlement negotiations were unsuccessful. *Id.*

Given the record before us, we find no manifest error in the trial court's findings, nor do we find that the trial court abused its discretion in determining that the judgment should be declared null based on the ill practices of Buster's LLC's counsel of record, Mr. Phillips. We find no merit in this assignment of error.

19

### *Assignments of Error Number Two, Three, and Four*

All three of these assignments of error relate to the trial court's award of attorney fees and will be considered together. There is little factual disagreement concerning the actions of the parties after the filing of the petition to annul the judgment, but the parties disagree over whether these actions justify the trial court's award of attorney fees.

In rendering judgment, the trial court declined to use its discretion and cast Buster's LLC with attorney fees as provided for in La.Code Civ.P. art. 2004(C). Instead, the trial court awarded the attorney fees based on the pleading signing requirements of La.Code Civ.P. art. 863. That Article reads as follows:

> A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
>
> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleadings, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
>
> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
>
> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonable based on a lack of information or belief.

C.  If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

D.  If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

E.  A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F.  A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

G.  If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

Pleadings, as contemplated by La.Code Civ.P. art. 863, "shall be in writing and shall consist of petitions, exceptions, written motions, and answers."  La.Code Civ.P. art. 852.

The certification of Buster's LLC's original suit is not at issue in this litigation.  In fact, the only writing qualifying as a pleading filed in the default judgment proceedings was the "**MOTION FOR PRELIMINARY DEFAULT**" signed and filed by Mr. Phillips on June 13, 2014.  That motion reads in pertinent part as follows:

On Motion of Ashley W. Phillips, attorney for Petitioner, and on showing to this Court that a certified copy of the Petition for Damages, etc. was received by defendants, Lancaster Manufacturing, Inc., through its' [sic] registered agent Tony Carey, and Tony Carey, individually, through the long arm statute on the 5th day of May, 2014, and that the Defendants have failed to appear or to file an answer herein within days [sic] (30) days from May 14, 2014, the date that the affidavit of service through the long arm statute was filed into the

21

record (Exhibit "A"), Mover now asks this Honorable Court to enter a Preliminary Default against defendants, Lancaster Manufacturing, Inc. and Tony Carey, individually.

By signing this motion, Mr. Phillips certified that it was not being presented for any improper purpose. La.Code Civ.P. art. 863(B)(1). However, the trial court found that it was presented for an improper purpose—to obtain a judgment against a party without notifying that party of the action, and without divulging to the trial court that negotiations were ongoing and that the opposing counsel had been given an extension of time in which to plead. As previously stated, we find no error in the trial court's factual and legal findings with regard to this issue.

With regard to the attorney fees issue, Mr. Phillips first asserts that the trial court did not consider the obligation Lancaster and Mr. Carey had, under La.Civ.Code art. 2002, to mitigate their damages after the entry of the default judgment. Specifically, he asserts that all of the subsequent litigation could have been avoided if they had accepted his September 2014 offer to settle the litigation.

To repeat the background associated with this argument, issue had been joined to the August 1, 2014 nullity petition, and the injunction had been rendered when Mr. Phillips forwarded his September 15, 2014 e-mail offering to consent to the nullity judgment if the claims for sanctions and attorney fees were dismissed. Ms. de la Houssaye ended the first paragraph of her September 19, 2014 counteroffer by stating that "Jones Walker proposes the following[.]" She followed this statement with the offer that the matter could be settled if Mr. Phillips (not Buster's LLC) agreed to an order and judgment recorded at his own expense stating that he wrongfully obtained the default judgment using ill practices; pay $7,000.00 to Jones Walker for attorney fees; pay all court costs including $68.74 in travel expenses; and self-report his misconduct to the

22

Louisiana Board of Ethics. Mr. Phillips responded by rejecting the offer[14] and threatening to file discovery pleadings, obviously believing that the answers to those discovery requests would be revealing and incriminate Jones Walker. He followed this rejection with the letter to Mr. Washington, which had the obvious purpose of encouraging him to intervene and agree to the settlement and avoid what Mr. Phillips suggested might be embarrassing consequences to the firm. At this point, everything had spun out of control past possible settlement, and nothing was left but to go to trial.[15]

Louisiana Civil Code Article 2002 falls within the section of the Louisiana Civil Code covering conventional obligations. It provides that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." Mr. Phillips cites no statutory law or jurisprudence that would require the extension of this duty to a matter in litigation, and we decline to do so. In fact, Mr. Phillips' argument concerning the failure of the defendants to accept his settlement offer is better addressed in the evaluation of the reasonableness of the attorney fees awarded. Accordingly, we find no merit in this assignment of error.

In his last two assignments of error, Mr. Phillips does not question the trial court's authority to order him to pay Lancaster and Mr. Carey attorney fees pursuant to La.Code Civ.P. art. 863(D).[16] Instead, he questions the sufficiency of the evidence and argues the excessiveness of the award.

---

[14] Mr. Phillips did not seem to recognize in his rejection of the counteroffer that Ms. de la Houssaye expected him, not Buster's LLC, to pay the attorney fees.

[15] This factual background simply reaffirms our conclusion that by this time, for all practical purposes, the litigation had ceased to be between the clients.

[16] This is despite the fact that in their petition to have the judgment annulled, Lancaster and Mr. Carey sought only reimbursement of expenses under La.Code Civ.P. art. 863.

In reaching its decision on the attorney fees issue, the trial court relied exclusively on Ms. Crosby's affidavit and a number of internal billing documents of the Jones Walker firm, which were attached to the motion setting the matter for trial. As previously stated, none of these were introduced into evidence.[17] Thus, we must agree with Mr. Phillips that the trial court had no admissible evidence before it when making the decision concerning the attorney fees award. However, that fact does not end the inquiry.

Faced with a similar evidentiary situation in *Stanley v. Crowell & Owens, LLC*, 15-395, p. 4 (La.App. 3 Cir. 10/7/15), 175 So.3d 1204, 1207-08, *writ denied*, 15-2035 (La. 1/8/16), 184 So.3d 694, where no evidence was properly introduced this court affirmed an attorney fee award based on the jurisprudence of this state concerning the trial court's ability to set such a fee:

> [T]he trial court has discretion in determining the amount of an attorney fee based upon its own knowledge, the evidence, and its observation of the case and the record. *Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc.*, 32,441 (La.App. 2 Cir. 12/8/99), 748 So.2d 594. In fact, a court does not have to hear evidence concerning the time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. *Burford v. Burford*, 95-2318 (La.App. 1 Cir. 06/28/96), 677 So.2d 722. When the nature and extent of the services of an attorney are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value even in the absence of expert testimony. *Mitchell v. Turner*, 588 So.2d 1305 (La.App. 2 Cir. 1991).

Thus, while a failure to introduce evidence in most cases would be fatal to a litigant's claim for relief, the jurisprudence of this state has no evidentiary requirement with regard to the trial court's setting of an attorney fee award. Not only does a trial court have much discretion in awarding attorney fees, but "it does not have to hear evidence concerning time spent or hourly rates charged and can

---

[17] In fact, they would have been inadmissible if offered. *See Stanley v. Crowell & Owens, LLC*, 15-395 (La.App. 3 Cir. 10/7/15), 175 So.3d 1204, *writ denied*, 15-2035 (La. 1/8/16), 184 So.3d 694.

make an award based solely on its knowledge and expertise after considering the record." *Id.* at 1211. Thus, Mr. Phillips' assignment of error asserting a lack of evidence for the trial court's award is without merit.

This leaves us with Mr. Phillips' argument that the attorney fees award was not reasonable and the total amount of the award was not incurred by Lancaster and Mr. Carey because their counsel admitted that the clients had never been billed for the services rendered, and would only be billed to the extent of the ultimate award. We review an award of attorney fees under an abuse of discretion standard, and "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact." *Covington v. McNeese State Univ.*, 12-2182, p. 11 (La. 5/7/13), 118 So.3d 343, 351.

In her September 19, 2014 counteroffer, Ms. de la Houssaye stated that the Jones Walker firm had incurred more than $10,000.00 in attorney fees on behalf of its clients, but it would accept $7,000.00 as settlement of that portion of the litigation if Mr. Phillips would agree to the other aspects of the counteroffer. While the primary unacceptable condition of the counteroffer was the self-reporting requirement imposed on Mr. Phillips, he made it plain in his e-mail to Mr. Washington that neither he nor his client would consider the payment of any attorney fees or costs, and that they simply wanted to walk away from the litigation without any further exposure. At the trial of the attorney fees rule six months later, Jones Walker sought $34,042.50 in attorney fees on behalf of their clients, and the trial court awarded $28,092.50.

Lancaster and Mr. Carey initially sought attorney fees pursuant to La.Code Civ.P. art. 2004(C), which contemplates the award of attorney fees in favor of the "prevailing party" in the litigation. In its reasons for judgment, the trial court did

not mention La.Code Civ.P. art. 2004(C). Instead, the trial court based its award of attorney fees on La.Code Civ.P. art. 863. Application of that provision requires the filing of a pleading which has been certified by the attorney signing the pleading that "[t]he pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." La.Code Civ.P. art. 863(B)(1). While the trial court did not state with particularity the basis for its application of La.Code Civ.P. art. 863 instead of La.Code Civ.P. art. 2004, the only pleading that could be the basis of a violation of that provision is the motion for preliminary default filed by Mr. Phillips. This pleading gave rise to the July 14, 2014 default judgment against Lancaster and Mr. Carey, which in turn, gave rise to the petition seeking nullity of that judgment.

In addition to his argument that he should owe no attorney fees past the date of his rejected settlement offer, Mr. Phillips also argues that Lancaster and Mr. Carey should not be awarded an attorney fees award on charges not yet invoiced. Still, he offers no legal support for this argument, and we find no merit in this argument. Nor do we find any merit in his argument that because Ms. de la Houssaye was not initially enrolled as counsel of record, her accumulated attorney fees cannot be collected. As with his other argument, he presents no legal support for his position, and we find nothing in the law to suggest that an attorney not yet enrolled in the litigation cannot be compensated for work performed on behalf of the client.

Finally, we find that the insertion of the requirement that Mr. Phillips refer himself to the Louisiana Attorney Disciplinary Board as a condition of the settlement of the litigation to be ill advised, as the ethical issue involving his conduct should be secondary to the representation of the individual clients. However, given his unwillingness to even consider any attorney fees exposure

26

until trial, it is highly doubtful that Mr. Phillips would have accepted the counteroffer absent this condition. Additionally, his threat to file completely inappropriate discovery requests in an effort to force a settlement further add to the conclusion that a merits trial of the nullity petition was absolutely necessary to conclude this litigation.

The amount of attorney fees sought totaled $34,042.50, and the trial court reduced that amount by $7,232.50. We find no abuse of discretion in the trial court's award of attorney fees, but reduce the award to $26,810.00 based on the trial court's mathematical error in calculating the award. ($34,042.50 − $7,232.50 = $26,810.00, not $$28,092.50).

### ANSWER TO APPEAL

Lancaster and Mr. Carey filed an answer to appeal, requesting an increase in the amount of attorney fees awarded to them by the trial court and additional attorney fees for their work on appeal. We have already addressed the amount of attorney fees awarded by the trial court, and found no abuse of discretion of the trial court in awarding less than that requested by Lancaster and Mr. Carey.

Considering the request for attorney fees on appeal, we first note that it has long been held that an award of attorney fees must be supported by a specific statute authorizing the award, or by contract. *Huddleston v. Bossier Bank & Trust Co.*, 475 So.2d 1082 (La.1985). Additionally, as between the litigants, "[w]hen an award for attorney's fees is granted at a lower court level, the recipient of those fees is entitled to additional fees for work done on appeal." *McFadden v. Import One, Inc.*, 10-952, p. 16 (La.App. 3 Cir. 2/9/11), 56 So.3d 1212, 1223.

The matter before us does not constitute a dispute between litigants, but involves a sanction imposed on Mr. Phillips for his violation of La.Code Civ.P. art. 863. The imposition of attorney fees is only one of many choices the trial court

27

had pursuant to that Article, and we do not find that it is one of those statutorily or contractually authorized attorney fees for which an additional award of attorney fees on appeal is recoverable. Therefore, we find no merit in the request of Lancaster and Mr. Carey for additional attorney fees on appeal.

## DISPOSITION

For the forgoing reasons, we affirm the trial court's judgment annulling the default judgment obtained by Buster's Frozen Custard, LLC. We further amend the trial court's judgment in favor of Lancaster Manufacturing, Inc. and Antony Carey and against Ashley Phillips for $28,092.50 in attorney fees by reducing the award to $26,810.00, and affirm the award as amended. We reject the request of Lancaster Manufacturing, Inc. and Antony Carey for an increase in the trial court's attorney fees award, and for an award of attorney fees on appeal. We assign one half of the costs of appeal to Buster's Frozen Custard, LLC, and one half to Ashley Phillips.

**AFFIRMED AS AMENDED.**